```
 1                IN THE UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF ARKANSAS
 2                         CENTRAL DIVISION

 3   UNITED STATES OF AMERICA,

 4                    Plaintiff,

 5    v.                              No. 4:13CR00326 BRW

 6                                    June 18, 2015
                                      Little Rock, Arkansas
 7                                    3:31 PM
     JASON WOODRING,
 8
                      Defendant.
 9

10               TRANSCRIPT OF SENTENCING HEARING
             BEFORE THE HONORABLE BILLY ROY WILSON,
11                UNITED STATES DISTRICT JUDGE

12               _____

13   APPEARANCES:

14   On Behalf of the Government:

15       MR. MICHAEL GORDON, Assistant U.S. Attorney
           U.S. Attorney's Office
16         425 West Capitol Avenue, Suite 500
           Post Office Box 1229
17         Little Rock, Arkansas  72201-1229

18

19   On Behalf of the Defendant:

20       MR. CHRIS TARVER, Attorney at Law
           Federal Public Defenders Office
21         1401 West Capitol Avenue, Suite 490
           Little Rock, Arkansas  72201

22

23       Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
24   transcription.

25
```

1          (Proceedings commencing in open court at 3:31 p.m.)

2          THE COURT:  We're here today for sentencing in

3  United States against Jason Woodring in Case No.

4  4:13CR00326-001.  Mr. Woodring is here with Mr. Tarver, his

5  lawyer.  Mr. Gordon's representing the prosecution.  The

6  parties ready?

7          MR. TARVER:  We are, Your Honor.

8          MR. GORDON:  Ready, Your Honor.

9          THE COURT:  I'm going to review the case a little

10 bit here.  On March 10th, 2015, Mr. Woodring appeared with his

11 lawyer, pled guilty to Counts 2, 3, 4, and 8 of an eight-count

12 indictment.  Mr. Woodring was charged with destruction of an

13 energy facility in violation of 18, United States Code, Section

14 1366(a).  The offense occurred on or about August 21 and

15 September 29, 2013.  Count 4 charged him with use of a fire to

16 commit a felony in violation of 18, United States Code, Section

17 844(h).  This offense occurred on or about September 29, 2013.

18 Count 8 charged Mr. Woodring with drug user in possession of a

19 firearm in violation of 18, United States Code, Section

20 922(g)(3).  This occurred on or about October 11th, 2013.

21          On March 10th of this year, Mr. Woodring and Mr. Tarver

22 pled guilty to the indictment and they entered into a plea

23 agreement under Federal Criminal rule 11(c)(1)(C).  The

24 prosecution agreed to dismiss Counts 1, 5, 6, and 7 at

25 sentencing assuming that I accept the recommended sentence of

| 1 | 15 years, 180 months' imprisonment.  Do I have the background |
| 2 | stated correctly? |
| 3 | MR. TARVER:  Yes, Your Honor. |
| 4 | MR. GORDON:  Yes, Your Honor. |
| 5 | THE COURT:  Mr. Woodring, are you satisfied with |
| 6 | Mr. Tarver as your lawyer? |
| 7 | THE DEFENDANT:  Yes, Your Honor. |
| 8 | THE COURT:  100 percent? |
| 9 | THE DEFENDANT:  Yes. |
| 10 | THE COURT:  You think there's any reason I should |
| 11 | allow you to withdraw your plea of guilty that you entered on |
| 12 | March 10? |
| 13 | THE DEFENDANT:  No. |
| 14 | THE COURT:  You want to? |
| 15 | THE DEFENDANT:  No. |
| 16 | THE COURT:  Well, of course, I've considered the |
| 17 | factors listed in 18, United States Code, Section 3553(a), I've |
| 18 | been over the presentence report.  There's an agreed on |
| 19 | sentence.  This is under the (C) portion of that rule I cited |
| 20 | earlier.  And if I don't accept it, as I understand, the |
| 21 | defendant has a right to withdraw his plea of guilty.  I have |
| 22 | this reservation.  In the presentence report and anything else |
| 23 | I've heard, I don't see any reference to the motivation for |
| 24 | these acts by the defendant, and I would -- I'm interested in |
| 25 | that because it could have a bearing on whether I approve the |

1    agreed on sentence.  Do the parties want to consult on that
2    before that's addressed?
3                    MR. TARVER:  No.
4                    THE COURT:  Does the prosecution know or have any
5    idea what the motivation was?
6                    MR. GORDON:  I do, Your Honor.  And I could call
7    Agent Burrows who interviewed Mr. Woodring.
8                    THE COURT:  You can come to the lectern and state as
9    you understand it and the defense lawyer can cross-examine the
10   witness.
11                   MR. GORDON:  Actually, Your Honor, my understanding
12   is Mr. Woodring is going to tell you when he speaks to the
13   Court and so we can --
14                   THE COURT:  He's going to tell me?
15                   MR. GORDON:  I'd rather him tell you himself.
16                   THE COURT:  Why don't you just get the mic up close
17   there and tell me why you did this.
18                   THE DEFENDANT:  Well, we live in uncertain times.
19   And I've talked to a lot of people over the last 15 years or so
20   from all walks of life, rich, poor, black, white, male, female,
21   and the consensus seems to be that things are kind of getting
22   worse in our society.  After my son passed away in 2007, I kind
23   of took a step back in my life and I kind of was trying to
24   think of a way I could do something to try to help make things
25   better for this country for everybody.  And I started doing a

1    lot of research on some of the major problems that are going on

2    in this country, things that affect everybody, and started

3    learning a lot about things that we could do to try to make

4    things better for not just one group but for everybody.

5         And I started going around trying to show people these

6    things that I was learning and trying to get other people

7    involved.  And all I could get from people is, you know,

8    everybody was too busy with these little distractions like

9    their face in a cell phone or in a computer or in the TV or on

10   video games and everybody seemed too distracted with these

11   things that are unimportant to listen to what is really

12   important and things that we really need to focus on.  And I

13   got frustrated trying to get people's attention.  And I don't

14   know why it came to me to do what I did, but I thought if I

15   could take the power out, that it would take away all these

16   things that are distracting people and I might be able to get

17   people to listen to me and listen to the things that are

18   important and pay attention.

19        Because I know as a society, you know, every time we have

20   a disaster, a tornado hits in Oklahoma or something, people

21   come together and they do the right thing, you know, they pitch

22   in and they do what it takes to make things better for the

23   people that are in need.  So I know we have that in us, you

24   know, but the things that seemed to be bringing our society

25   down and heading us toward some kind of, you know, what most

1  people think that at some point something bad's going to happen
2  if we keep going on the path that we're on and with the way
3  things are going, if we don't make some major changes, if the
4  majority of people don't become involved in trying to make
5  things better, that our society's going to fall apart at some
6  point, you know.  And it's not -- that's not an illogical fear,
7  that's something that's reality.
8       So it just seemed that everybody's just -- people feel, I
9  think individuals feel like they're so powerless as individuals
10  to make a change so they'd rather keep themselves preoccupied
11  with little things that are unimportant rather than having to
12  focus on and actually deal with the problems that are affecting
13  all of us.  And when I climbed up on that 500,000-volt power
14  tower to cut down that power line, I went up there, I thought I
15  was actually going to be doing good and helping people that,
16  you know, by taking the power out that people would have to
17  focus on things that are important instead of all these little
18  devices and things that are not important, and that was my
19  motivation behind what I did.
20            THE COURT:  All right. Let me move now to the
21  presentence report.  Does either side have an objection to it?
22            MR. TARVER:  No, Your Honor.
23            MR. GORDON:  No objection.  And I would ask you to
24  award Mr. Woodring his third point for acceptance.
25            THE COURT:  Granted.  I'll adopt it with that and if

1   either side appeals the sentence, it'll be released to the

2   lawyers for the parties without further orders of the Court.

3   Is there any -- since I anticipate giving the agreed sentence,

4   is there any reason for me to go through the guidelines, get

5   what the guidelines suggest other than the bottom line?

6           MR. TARVER:  No, Your Honor.

7           MR. GORDON:  If the defense doesn't want it, then I

8   don't either, Your Honor.

9           THE COURT:  I think on the guidelines, on Counts 2,

10  3, and 8, it would be -- on Counts 2 and 3 not more than 20

11  years.  Count 8, not more than ten years.  Based on a total

12  offense level of 22 years and a criminal history category of

13  II, it would be 46 to 57 months.  On Count 4, the minimum

14  statutory imprisonment for Count 4, the minimum is ten years,

15  and that must run consecutive to all other counts.  The

16  guideline provides that the term of imprisonment will be one

17  required by statute.  That's under Guideline 2K2.1(A).

18  Supervised release under 18, United States Code, Section 3583

19  will be five years, and the financial report indicates that

20  Mr. Woodring would not be able to pay a lump sum or installment

21  fine.

22      The statutory maximum would be $250 per count, but I'm

23  not going to impose a fine.  Restitution under 18 U.S.C.

24  Section 3663(a) is a total amount of 4,840,953.45.  Restitution

25  is due to the following victims:  Entergy, $4,792,224.06; First

1    Electric Co-op, $48,729.39.  Do I have the restitution stated

2    correctly?

3                    MR. GORDON:  You do, Your Honor.

4                    MR. TARVER:  Yes, Your Honor.

5                    THE COURT:  All right.  That's ordered.  The

6    interest is waived.  100-dollar special penalty assessment on

7    each count, a total of $400.  Does anybody want to say anything

8    before I impose sentence?

9                    MR. TARVER:  Your Honor, the only thing is

10   Mr. Woodring would ask for a recommendation to Memphis.

11                   THE COURT:  Recommendation for Memphis?

12                   MR. TARVER:  Yes, Your Honor.

13                   THE COURT:  Any objection to that from the

14   prosecution?

15                   MR. GORDON:  No, Your Honor.

16                   THE COURT:  All right.  Mr. Woodring, you understand

17   I can make a recommendation, but the Bureau of Prisons makes

18   the decision?  You understand that?

19                   THE DEFENDANT:  Yes, sir.

20                   THE COURT:  Anything else before I impose sentence?

21                   MR. GORDON:  Your Honor, I guess there is a

22   forfeiture allegation that is open.  I think we addressed that

23   as part of the plea agreement and we addressed it at the plea

24   hearing.  I guess we'll send you an order on that.

25                   THE COURT:  Yes, I grant forfeiture.  Any

1    objections?

2              MR. TARVER:  No.

3              THE COURT:  You agree with that, Mr. Woodring?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Mr. Woodring is committed to the custody

6    of the Bureau of Prisons for imprisonment of a term of 180

7    months for Counts 2, 3, 4, and 8 in accordance with the plea

8    agreement.  Supervised release of five years.  Was it four

9    years in the plea agreement or five years?

10             MR. GORDON:  On supervised release, Your Honor?

11             THE COURT:  Yes.

12             MR. GORDON:  The plea agreement did not address

13   that.

14             THE COURT:  It will be five years upon his release

15   from imprisonment with these conditions.  He must report to the

16   probation office in the district to which he is released within

17   72 hours of release from the custody of the Bureau of Prisons

18   and comply with all mandatory and standard conditions that

19   apply.  He'll participate under the guidance of the probation

20   office in a substance abuse treatment program which may include

21   testing, outpatient counseling, and residential treatment.

22         Further, the defendant will abstain from the use of

23   alcohol during the course of any such treatment.  He'll be

24   required to participate in a mental health program under the

25   guidance and supervision of the probation office.  The

1  defendant will pay for the cost of treatment at the rate of $10

2  per session with a total cost not to exceed $40 a month based

3  on his ability to pay as determined by the probation office.

4  In the event the defendant is financially unable to pay the

5  cost of treatment, the co-pay requirement will be waived.

6  He'll be required to cooperate in the collection of DNA as

7  directed by the probation office.  He cannot possess or own a

8  firearm, ammunition, destructive device or any other dangerous

9  weapon.

10        He's ordered to pay restitution in the amount of

11  $4,840.53 (sic) to the district clerk.  During incarceration,

12  he'll pay 50 percent per month of all funds available to him.

13  During residential reentry placement and supervised release,

14  payments will be 10 percent of the defendant's gross monthly

15  income.  Interest is waived.  He'll have to disclose all

16  requested financial information to the probation office.

17  There's a 400-dollar total special penalty assessment.  The

18  forfeiture is granted.  Any objections to the form of the

19  sentence?

20        MR. GORDON:  Judge, there were a lot of numbers and

21  commas in that restitution amount, and just to clarify, it

22  should be $4,849,953.43.

23        THE COURT:  What says the defense?

24        MR. TARVER:  I believe that's correct, Your Honor.

25        THE COURT:  Correction is made.

1      MR. TARVER:  Your Honor, one other thing with regard

2   to the restitution.  Mr. Woodring wanted me to ask if the Court

3   would amend its order to 50 percent of income earned by him

4   while he's incarcerated.  He doesn't really necessarily

5   anticipate -- his mother and his father are both elderly.

6      THE COURT:  I've read their letters, by the way, and

7   I appreciate them sending them, but my hands were tied.  Go

8   ahead.  In other words, if they send him $100, he doesn't want

9   that to be subject to the 50 percent?

10      MR. TARVER:  Right, because it's punishing them, and

11   it's going to be a struggle for them to give him any money

12   because I know his dad is sick and probably going to end up in

13   a nursing home if he isn't already.  His mom is working, but,

14   you know, she's strapped for cash, and so any --

15      THE COURT:  What says the prosecution on that?

16      MR. GORDON:  I don't mind, Judge.

17      THE COURT:  All right.  Earned income.

18      MR. TARVER:  Thank you.

19      THE COURT:  That'll be the applicable part.

20   Anything else before I advise Mr. Woodring of his appeal

21   rights?

22      MR. TARVER:  No, Your Honor.

23      MR. GORDON:  No, Your Honor.

24      THE COURT:  Mr. Woodring, you have a right to appeal

25   your conviction if you believe that your guilty plea was

1   somehow involuntary or if there's some other fundamental defect

2   in the proceeding that was not waived by your guilty plea.  You

3   also have a statutory right to appeal your sentence under

4   certain circumstances, particularly if you think it's contrary

5   to law.  With very few exceptions, a notice of appeal must be

6   filed within 14 days of judgment being entered in your case.

7   If you're unable to pay the costs of appeal, you may apply for

8   leave to appeal in forma pauperis.  If you ask, the clerk of

9   the court will prepare and file a notice of appeal on your

10  behalf.

11          Mr. Woodring, when I sentence someone to time in the FCI,

12  I don't believe in giving them a lecture, so what I'm about to

13  say is not a scolding, it's I urge you to do everything you can

14  to get rid of your drugs, your tendency to do drugs, because

15  I'm going to promise you that judge meth will give you a death

16  sentence.  And I hope that you can do everything possible and

17  everything available to you in your time to get rid of your

18  dependence on drugs.  Like I say, I'm not scolding you, I'm

19  just urging you to do that.

20                  THE DEFENDANT:  That's my plan.

21                  THE COURT:  Good.  Is there anything else we need to

22  take up?

23                  MR. GORDON:  Your Honor, I guess formally, I need to

24  ask the Court to dismiss Counts 1, 5, 6, and 7 against

25  Mr. Woodring in this indictment.

1          THE COURT:  Granted.  Anything else?

2          MR. TARVER:  No, Your Honor.

3          THE COURT:  All right.  We're in recess.  Thank

4     y'all for your time.

5          (Proceedings adjourned at 3:51 p.m.)

6                    REPORTER'S CERTIFICATE

7      I certify that the foregoing is a correct transcript of

8     proceedings in the above-entitled matter.

9

10    /s/ Karen Dellinger, RMR, CRR, CCR
      -----------------------------------          Date: March 23, 2021
11    United States Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25